IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


JEFFREY KLECKNER                                                    PETITIONER

V.                                              CIVIL ACTION NO.:  1:17CV208-SA-RP

ANDREW MILLS                                                       RESPONDENT

MEMORANDUM OPINION AND ORDER

        Petitioner Jeffrey Kleckner, a Mississippi inmate proceeding *pro se*, has filed a federal

habeas petition pursuant to 28 U.S.C. § 2254 challenging the convictions and sentences that he

received in the Circuit Court of Union County, Mississippi, for three counts of sexual battery and

one count of touching a child for lustful purposes.  Having considered the submissions of the

parties, the State-court record, and the law applicable to Kleckner's claims, the Court finds that

the petition should be denied.

I.
Background Facts and Procedural History

        In the summer of 2006, AB[1] confided to her cousin, Whitney, that Jeffrey Kleckner, AB's

cousin and neighbor, had sexually assaulted her.  AB continued to confide in Whitney as she

endured additional assaults committed by Kleckner.  Whitney eventually disclosed the

information to her mother, AB's aunt.  AB's aunt contacted AB's parents on Sunday, September

7, 2008, and as a result of that telephone call, AB disclosed to her parents that Kleckner had

engaged in inappropriate sexual conduct with her.  AB's parents contacted the Union County

Sheriff's Department, which began an investigation.

---

[1] The appellate court identified the victim only as "AB" in its written opinion in order to protect the victim's
identity.  *See Kleckner v. State*, 109 So. 3d 1072, 1076 n.1 (Miss. Ct. App. 2012).  This Court retains the same
identifier for purposes of this opinion.

On Tuesday, September 9, 2008, Angie Floyd, a forensic-interview specialist with the Children's Advocacy Center in Tupelo, interviewed AB. After the interview, Roger Garner, an investigator with the Union County Sheriff's Department who was also present during the forensic interview, obtained affidavits and warrants for Kleckner's arrest. Kleckner was arrested at his girlfriend's home in Blue Mountain, Mississippi, on September 10, 2008, and was transported to the Union County Sheriff's Department, where he waived his rights and gave the following statement:

> During the summer of 2006 after I got laid off from the furniture factory, I had too much time on my hands. [AB] had come up to my shop on County Road 121 and talked about stuff—the cars, school, boys, and her dad's dogs. The first time I touched her we were in the house playing cards. She is an aggressive and curious girl. I was alone and thinking about stuff and I started to talk to her. I touched her breasts and nipples. I then touched her vagina and I put my finger inside her and rubbed it around. I can't remember if I moved my hand or if she reached for my penis, but she touched my erect penis and I was aroused. I don't know if I made her climax or not. I didn't, I don't think, but the first time she reached out and touched my penis. I remember at one time in the car that I touched her vagina area inside her thigh, but nothing else happened that time. I don't think there were any other times. I told her that she should be careful of boys that might take advantage of her and do more to her. I did not want her to hate me. After this stuff happened, I just stay [sic] away from the family. About a month or so ago, I called to ask about the zoo, but she did not answer.

Doc. #21-4 at 91-92.

On September 10, 2008, Kleckner was arrested and booked into the Union County Jail, where he remained until he was released on September 19, 2008. He was indicted on October 21, 2008, for three counts of sexual battery and one count of touching a child for lustful purposes.[2] Joe T. Gay entered an appearance as defense counsel on April 27, 2009.

Trial was set for September 14, 2009 by order entered June 10, 2009. On September 11, 2009, Kleckner was admitted to the hospital with chest pains, uncontrolled diabetes, and acute kidney injury. He underwent a heart procedure on Monday, September 14, 2009, and remained

---

[2] The indictment was amended September 16, 2009, to substitute "finger" with "tongue" in Count IV. *See* Doc. #2-2 at 61-63.

hospitalized until the following day. On Monday, September 14, 2009, defense counsel made an *ore tenus* and off-the-record motion for a continuance because of Kleckner's hospitalization that was denied by the trial court. Kleckner's jury trial began on Wednesday, September 16, 2009, with Kleckner present. He testified in his own defense at trial.

On September 18, 2009, Kleckner was found guilty on all counts. He was ordered to serve three concurrent terms of life imprisonment for the sexual battery convictions and a consecutive fifteen-year sentence for the conviction of touching a child for lustful purposes. Doc. #21-1 at 90. The circuit court ordered that the sentences would not be reduced or suspended, that Kleckner would not be eligible for any type of sentence reduction or parole, and that he would be required to comply with the State laws regarding sex offender obligations, including registration per to Miss. Code Ann. § 43-33-25. *Id.*

Kleckner appealed, and the Mississippi Court of Appeals affirmed the convictions and sentences on May 22, 2012. *Kleckner v. State*, 109 So. 3d 1072 (Miss. Ct. App. 2012), *reh'g denied*, Nov. 13, 2012, *cert. denied*, March 28, 2013 (Cause No. 2009-KA-01681-COA). Thereafter, Kleckner, proceeding *pro se*, filed a post-conviction relief application in the Mississippi Supreme Court. By Order dated September 17, 2014, the Mississippi Supreme Court granted Kleckner's application as to one issue only: "that trial counsel was ineffective for failing to object to Exhibits S-10 and S-11 and for offering Exhibits D-5, D-6, D-7, and D-8."[3] Doc. #20-2. Leave to file post-conviction relief was denied as to all other issues. *Id.* Thereafter the Circuit Court of Union County, Mississippi, denied post-conviction relief as to the identified issue by Order entered November 18, 2015. Doc. #20-3.

---

[3] Exhibit S-10 was four arrest warrants. Doc. #21-4 at 118. Exhibit S-11 was a warrant and the affidavit of Roger Garner. *Id.* at 120. Exhibit D-5 was the Union County Sheriff Dept. detailed offense form. *Id.* at 100. Exhibit D-6 was The Family Resource Center report. *Id.* Exhibit D-7 was the typed report of Officer Roger Garner. *Id.* Exhibit D-8 was four copies of the affidavit of Roger Garner. *Id.* at 102.

Kleckner appealed, and on March 21, 2017, the Mississippi Court of Appeals affirmed the Circuit Court's denial of Kleckner's post-conviction relief motion as to the one post-conviction issue. Doc. #20-4. His motion for rehearing was denied by the Mississippi Court of Appeals, and his petition for writ of certiorari was denied by the Mississippi Supreme Court. *See Kleckner v. State*, 230 So. 3d 1042 (Miss. Ct. App. 2017), *reh'g denied*, July 18, 2017, *cert. denied*, Sept. 28, 2017 (Cause No. 2016-CP-00499-COA).

On November 20, 2017, Kleckner, proceeding *pro se*, filed the instant petition for a writ of habeas corpus, raising two grounds for relief:

Ground One:   Ineffective Assistance of Counsel.

Ground Two:  Improper Interrogation.

On June 14, 2018, Respondent filed an answer to the petition, conceding that the federal habeas issues raised by Kleckner were presented to the Mississippi Supreme Court for review.[4] Doc. #20 at 11. On July 3, 2018, Kleckner filed a reply to Respondent's answer. Doc. #22. This matter is ripe for review.

II.
Legal Standard

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

---

[4] Despite this concession, Respondents also argue that certain of Kleckner's interrogation-related claims, such as challenges to its length and lack of a recording, were not properly exhausted. *See* Doc. #20 at 29.

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11; *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (finding habeas relief merited where state decision was both incorrect and objectively unreasonable). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III.
### Claims

### Ground One

#### A. Ineffective Assistance of Counsel Standards

In Ground One, Kleckner claims that his trial attorney rendered ineffective assistance of counsel under the standards set forth in *United States v. Strickland*, 466 U.S. 685 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984), and that the Mississippi Supreme Court disregarded applicable precedent in deciding his claims.

Claims of ineffective assistance of counsel are generally governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to

satisfy a two-prong test to warrant federal habeas corpus relief: (1) demonstrate constitutionally deficient performance and (2) demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. This Court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Motley v. Collins*, 18 F.3d 1123, 1126 (5th Cir. 1994). In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

Under *Strickland*, prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Strickland*, 466 U.S. at 687, 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986) (citation omitted).

In *Cronic,* however, the United States Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citations omitted). These situations include (1) "the complete denial of counsel," (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not[.]" *Id*. (citations and internal citations omitted).

On direct appeal, the Mississippi Court of Appeals analyzed Kleckner's claims under the *Strickland* standard, finding "no obvious deficiencies that rose to the level of ineffective

assistance of counsel" and further finding "no merit to Kleckner's claim that he was denied

counsel at a critical state in the proceedings." *Kleckner*, 109 So. 3d at 1094.  It rejected

Kleckner's argument that *Cronic* rather than *Strickland* was the proper standard, as Klekcner

argued "specific failures of his counsel, not failure as a whole." *Id*. at 1095.

B.  Preparation for Trial

Kleckner argues that he was denied his Sixth Amendment right to counsel as (1) due to

his hospitalization three days prior to the start of trial, he was unable to meet with counsel for the

critical pre-trial preparation phase; (2) that trial counsel could not have adequately prepared him;

(3) that trial counsel did not have an opportunity to investigate his medical condition; (4) that

trial counsel did not have an opportunity to review the case or his statement in detail with him;

and (5) that trial counsel did not have an opportunity to review the DVD of the forensic

interview of the victim with him.  Kleckner also argues that his trial counsel failed to object to,

or move to suppress, the officer-written confession, failed to challenge the expert forensic

interviewer, failed to object to the police officer's testimony about the petitioner's medical

condition during his interrogation, failed to recognize specific voir dire or challenge the wife of

one of the arresting agency's officers as a jury member, and failed to object to the prosecutor's

admission of testimonial documents.

1.  Additional facts relevant to counsel's preparation

Joe Gay, an attorney who had been practicing over thirty-five years and who had been

involved in 100 criminal cases, was appointed to represent Kleckner.  *See* Doc. #21-7 at 25-26.

Gay entered an appearance in this case nearly five months prior to the beginning of trial.  *See*

Doc. #21-2 at 23.  Within days of his appointment, he filed motions for discovery and to inspect

physical evidence.  *Id*. at 25-41.  He received a copy of the victim's forensic interview on DVD a

month or two prior to trial.  Doc. #21-7 at 47.  Kleckner viewed a copy of the DVD, though he

apparently never viewed the DVD with Gay present.  *See, e.g., id*. at 59, 74-75.  Gay stated,

7

however, that he viewed the DVD several times and made a tactical decision not to introduce it, in part to keep away from the jury AB's statement that Kleckner "did it to other girls, too." *Id*. at 60, 62, 71, 80.

Gay prepared for trial for months, and he met with Kleckner for approximately 2 ½ hours less than a week before trial. Doc. #21-7 at 27-28. Upon learning of Kleckner's hospitalization the day Kleckner's trial was scheduled to begin, Gay made a motion for a continuance that was denied by the trial court. Doc. #21-7 at 32-34. On a post-trial motion for supplementation and enlargement of the record hearing on June 21, 2010, following a remand from the Mississippi Court of Appeals, Kleckner's counsel presented the affidavits of three criminal defense attorneys stating that Gay could not have rendered competent assistance given the circumstances. *See, e.g*., Doc. #21-7 at 25-26, 84, 93. One was from trial counsel, and another was deemed inadmissible at the remand hearing because the affiant was not available to testify. *Id.* at 25-95. The affidavits from the two attorneys uninvolved in the trial was based on Gay's own affidavit. *Id*.

At trial, Kleckner's defense was that his officer-written confession was not valid, as he could not see the confession or understand its contents or his rights because of his uncontrolled blood sugar. Doc. #21-4 at 137-139. He testified that he informed the officers numerous times during the interrogation that he did not feel well, and trial counsel extensively questioned Kleckner during direct examination about his medical condition at the time of his interrogation and written statement. Doc. #21-4 at 137-146; Doc. #21-5 at 3, 66. Gay also presented the testimony of Kleckner's girlfriend, Linda Carson, that Kleckner was impotent. Doc. #21-5 at 81-82.

2. Analysis

Based on the record before it, the Court finds that Kleckner was timely appointed counsel who prepared for trial months in advance, who cross-examined witnesses and argued various

motions, and who mounted a defense based on Kleckner's medical conditions. This is not a case warranting *Cronic*'s presumptive prejudice based on the denial of counsel or a failure of adversarial testing. *See Bell v. Cone*, 535 U.S. 685, 697 (2002) ("[R]espondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. . . . For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind."); *United States v. Griffin*, 324 F.3d 330, 364, (5th Cir. 2003) ("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice.").

Additionally, the circumstances present in Kleckner's case are not such that it was unreasonable to conclude that he had failed to demonstrate that counsel was called upon to render assistance in circumstances where competent lawyer could not. In fact, in *Cronic*, the Court found that prejudice should not be presumed where a criminal defendant was appointed a young, inexperienced attorney and provided only twenty-five days to prepare for a complex trial, and noted that while "the gravity of the charge, the complexity of the case, and the accessibility of witnesses. . . are all matters that may affect what a reasonably competent attorney could be expected to have done under the circumstances. . . none identifies circumstances that in themselves make it unlikely that the respondent received the effective assistance of counsel." *Cronic*, 466 U.S. at 665. In sum, Kleckner has failed to demonstrate that the decision declining a *Cronic* analysis is contrary to established Supreme Court precedent, and *Strickland* is the governing standard.

Therefore, with the *Strickland* standard in mind, the Court notes that on habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the

question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

The Court finds that counsel's actions did not render Kleckner's trial unfair or unreliable. As noted above, trial counsel prepared for months, filed various pre-trial motions, moved for a continuance, cross-examined each of the State's witnesses, and presented a defense based on Kleckner's medical conditions and his alleged impotence. He testified that he made a strategic decision not to introduce the DVD of the forensic interview of the victim, and Kleckner has not overcome the presumption that counsel's actions were a matter of trial strategy. Additionally, Kleckner has not demonstrated prejudice by counsel's actions, as the evidence against Kleckner was overwhelming. Accordingly, the Court finds that Kleckner has failed to demonstrate that the rejection of these claims warrants federal habeas relief under the AEDPA.

### C. Officer-Written Statement

Kleckner alleges his trial counsel rendered ineffective assistance in failing to move to suppress the officer-written confession introduced at his trial, as he was arrested immediately after a large breakfast and had not taken his diabetes medications or checked his blood sugar. Doc. #21-4 at 138. As a result, he claims, he was unable to properly see the document written by the officer or properly understand its contends, and officers ignored his requests to cease the interrogation. *Id*. at 137-39.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that a statement made by a person subject to a custodial interrogation is inadmissible unless that person was advised of his right to have an attorney present, of his right to remain silent, and that anything he says may be used against him. *Miranda*, 384 U.S. at 444-45. These rights may be

waived, provided that the waiver is voluntary, knowing, and intelligent.  *Id*; *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986).  In reaching a voluntariness determination, a court must ask whether the "totality of the circumstances" surrounding the interrogation demonstrates that the statement was uncoerced, and that it was the result of the suspect's own rational choice; that is, it was made with both "a full awareness of the nature of the right being abandoned and the consequence of the decision to abandon it."  *Moran*, 475 U.S. at 421; *United States v. Reynolds*, 367 F.3d 294, 297-98 (5th Cir. 2004).  While mental state may be a factor in a voluntariness determination, it is not determinative, as coercive police conduct is required before a court may conclude that a confession was involuntarily given.  *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Gay testified that he made a strategic decision not to file a motion *in limine* to suppress his client's statement, and it was read into the record by arresting officer Roger Garner.  *See* Doc. #21-7 at 64.  Garner testified at trial that he twice gave Kleckner his *Miranda* warnings, that Kleckner signed a waiver of those rights, and that he provided a voluntary statement, which Garner transcribed.  Doc. #21-4 at 82-85.  Garner stated that Kleckner appeared rational, that he understood his rights, that he was not coerced into giving a statement, that he never complained about physical illness, that he never appeared to need medical attention, and that he never even referenced diabetes.  *Id*. at 85, 92, 110, 120-21.  Garner testified that after or so of interrogation, he began to ask pointed questions about Kleckner's admission that he had sexually assaulted AB, at which time Kleckner stated he did not want to answer any more questions.  *Id*. at 89-90, 92.  Garner stated he asked a few additional questions that Kleckner did not respond to, at which point he stopped the interview.  *Id*. at 90-91, 108.

Chris Aldridge, the witnessing officer, corroborated and confirmed Garner's statement regarding the circumstances surrounding Kleckner's arrest, his voluntary statement, his physical condition, and observations concerning Kleckner's state of mind.  Doc. #21-5 at 105-115.  Trial

counsel cross-examined each of the State's law enforcement witnesses. Doc. #21-4 at 95-112; Doc. #21-5 at 115-123.

Kleckner testified in his own defense, stating he complained to officers six to eight times that he did not feel well, that he needed to check his sugar, and that he was confused at the time of the interrogation. Doc. #21-4 at 137-39, 143; Doc. #21-5 at 3, 21-25, 31, 49. He testified that due to his high blood sugar at the time of his interrogation, he was not in his right state of mind and does not remember making the statements that are written in his confession. *See, generally, id*. Notwithstanding, Kleckner initiated the statement 9 times and signed both pages of the statement, which Kleckner confirmed in his testimony. Doc. #21-10 at 10-11; Doc. #21-5 at 62-63.

Prior to closing arguments, outside of the presence of the jury, the trial court stated as follows:

> I want to opine on the record about — we had the testimony of the alleged confession of the defendant, which there was never a separate suppression hearing on that; and, of course, I want to reflect on that and let it be known that the proof as it came in, in essence, was tantamount to a suppression hearing in the presence of the jury rather than outside the presence of the jury. The Court's opinion is that had there been a separate suppression hearing, of course, the proof would have been the same and the Court would have denied a motion to suppress the statements of the defendant.

Doc. #5 at 132.

A determination of counsel's alleged ineffectiveness for failure to file a suppression motion depends on whether the motion would have been granted had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). There is sufficient evidence in the record that Kleckner's waiver of rights was voluntarily given, and the trial court, having heard all of the evidence, stated that a motion to suppress would have been denied had it been made. Therefore, any objection to the evidence would have been futile. *See, e.g., Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding counsel is not required to make futile motions). Accordingly,

Kleckner cannot demonstrate that his attorney was ineffective in failing to file a suppression motion, as there is no reasonable probability that such a motion would have been successful. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that when ineffectiveness claim is grounded on counsel's failure to litigate a suppression motion, the defendant must prove that the underlying constitutional claim is meritorious "and that there is a reasonable probability that the verdict would have been different absent the excludable evidence"). The Court finds that Kleckner has failed to demonstrate that the rejection of this claim warrants federal habeas relief under the AEDPA.

## D. Forensic Interviewer

Kleckner alleges that his counsel rendered ineffective assistance in failing to challenge the forensic interviewer, Angie Floyd, who testified as an expert witness in the field of child forensic interviewing. *See* Doc. #21-4 at 36-59.

Prior to trial, defense counsel filed a motion to determine the admissibility "of any alleged expert testimony." *See* Doc. #21-1 at 44-50. At trial, defense counsel stated that he and the prosecutor had reached a stipulation that the forensic interviewer's testimony would not involve the ultimate issue of the child's believability. Doc. #21-3 at 118-119. Defense counsel stated that he would not object to the interviewer's qualifications as an expert, as she had been tendered to the court as an expert in prior cases. *Id*. at 120.

At trial, Angie Floyd was tendered as an expert witness in the field of child forensic interviewing with no objections from defense counsel. Doc. #21-4 at 36-59. Defense counsel declined to voir dire her credentials, stating that that "[s]he has testified before in this court and has already been certified in the past, your Honor." Doc. #21-4 at 38. Floyd was accepted as an expert witness in the field of forensic interviewing and testified as to her findings. In particular, Floyd testified that the victim "disclosed abuse and that she did appear to be consistent with that of a child that had been sexually abused." *Id*. at 47-48. Defense counsel cross-examined Floyd

as to her qualifications, her interview procedures, and her personal knowledge of the events disclosed by the victim. *Id*. at 48-57. The DVD of the forensic interview was not placed into evidence. Defense counsel later testified that he made a tactical decision not to introduce the video, as he did not want the jury to be able to repeatedly view it or allow the jury to hear that his client may have allegedly assaulted other girls. Doc. #21-7 at 62, 71, 80.

Prior to closing arguments at trial, the trial court noted:

> [T]he testimony of the forensic interviewer [Angie Floyd] was actually a bit limited in scope. . . . There was some limited scope of her testimony, but in retrospect, it may have been that a separate hearing could have been held in connection with her testimony. It was not done and it would not have changed the result. Once her testimony did come in, had we had a separate hearing, the Court would have made its required findings to allow her to testify as an expert as a forensic interviewer and offer her opinions as she did in some areas. That would have been the ruling from the Court had we had a separate hearing on her interview. Also, since the separate testimony by DVD of the victim did not come in, it was limited in scope.

Doc. #21-5 at 132-33.

Kleckner has offered no legitimate basis on which trial counsel should have objected to Floyd's testimony. Counsel did, however, cross-examine Floyd about her qualifications and methods to cast doubt on Floyd's opinions. Kleckner has not demonstrated any deficiency on the part of defense counsel. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 111 (2011) (noting that "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation"). Even if defense counsel had offered an objection, however, the trial court explicitly stated it nevertheless would have allowed Floyd to testify as an expert. Accordingly, Kleckner cannot demonstrate that he was prejudiced by counsel's failure to raise an objection to Floyd's designation as an expert. *See, e.g., Oakley*, 827 F.2d at 1025 (holding determination of ineffectiveness depends on whether objection would have been sustained if made). The Court finds that Kleckner has failed to demonstrate that the rejection of this claim warrants federal habeas relief under the AEDPA.

### E. Officer Testimony Regarding Kleckner's Medical Condition

Kleckner next argues that trial counsel rendered ineffective assistance in failing to object to police officer "unqualified" testimony regarding Kleckner's medical condition during his interrogation.

Generally, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues. *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). Rather, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted). That is, the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a crucial, critical, and highly significant role in the jury's determination. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999) (quotation marks and internal quotation marks omitted).

At trial Garner testified that, as a diabetic and a trained officer, he could recognize when a person is having blood sugar issues. *See, e.g.*, Doc. #21-4 at 120-21. He and Aldridge also testified that Kleckner at no time mentioned his blood sugar, needing to take a break, or not feeling well. *See, e.g.*, Doc. #21-4 at 110; Doc. #21-5 at 108-112. This testimony was not improper medical opinion testimony, but rather, was based on their factual observations, which directly contradicted Kleckner's testimony. Moreover, even if Garner's testimony regarding his own experiences with diabetes was error, it was not crucial, critical, highly significant role in jury's determination and did not render trial fundamentally unfair. This claim fails to warrant habeas relief under the AEDPA.

### F. Voir Dire

Kleckner alleges that defense counsel rendered ineffective assistance in failing to recognize specific voir dire or challenge as a jury member the wife of one of the arresting agency's officers, who failed to disclose her relationship on voir dire. One juror's husband was

an investigator with the New Albany Police Department. Doc. #21-1 at 53; 21-9 at 112.[5] This information was listed on her juror information form, which was sent to both the defense and the State. *See, e.g.,* Doc. #21-7 at 109.

When a potential juror expresses doubt as to whether he can be impartial, counsel can be ineffective for failing to strike that juror. *See Virgil v. Dretke*, 446 F.3d 598, 609 (2006). However, when a juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court," he is sufficiently qualified for jury service. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

During voir dire, the State asked:

Q: My next question is going to be this: When you get a crowd of people this size in a county the size of New Albany and ask is anybody related to law enforcement, I would probably see a number of hands. My question is going to be more specific than that. Is there anybody here that's related to a current or former law enforcement officer by blood or marriage or any other way and that because of that association with a law enforcement officer you couldn't be fair and impartial in this case? Because of that association I'm going to go to the police officer no matter what he says or anything like that? You couldn't set that aside and be fair and impartial?

(NO RESPONSE)

Q: Seeing no hands, I assume as to that issue we all could be fair and impartial.

Doc. #21-3 at 72-73.

In this case, the juror's relationships with members of the law enforcement community was disclosed, and she failed to indicate that she would have any difficulty being impartial and fair. Therefore, the Court finds that the decision rejecting this claim fails to warrant relief under the AEDPA.

### G. Admission of Testimonial Documents

Kleckner alleges that defense counsel rendered ineffective assistance of counsel in failing to object to the prosecutor's admission of testimonial documents at trial.

---

[5] Her mother also worked at the Sheriff's Department. *See, e.g., Kleckner*, 109 So. 3d at 1088.

In post-conviction proceedings, Kleckner was granted leave to proceed on a post-conviction application in the circuit court on the issue of whether trial counsel was ineffective for failing to object to Exhibits S-10 and S-11 and for offering Exhibits D-5, D-6, D-7, and D-8. *See, e.g.,* Doc. #21-17 at 39. As noted previously, Exhibit S-10 contained four arrest warrants, Exhibit S-11 was a warrant and the affidavit of Roger Garner, Exhibit D-5 was the Union County Sheriff's Department offense form, Exhibit D-6 was the forensic interview synopsis, Exhibit D-7 was Roger Garner's typed report, and Exhibit D-8 was four copies of Roger Garner's affidavit. *See* Doc. #21-17 at 45-46 n.1 & n.2. The circuit court ultimately denied relief on the issue, finding that Kleckner failed to demonstrate that his trial counsel rendered deficient assistance, and that he was prejudiced because of counsel's performance. *See id*. at 49-50.

At the outset, the Court notes that the presentation of testimonial documents and whether to lodge an objection in front of the jury are both strategic decisions. *See, e.g., Coble v. Quarterman*, 496 F.3d 430, 439-440 (5th Cir. 2007); *Thomas v. Thaler*, 520 F. App'x 276, 281 (5th Cir. 2013) ("[P]anels from this court have recognized that deciding whether to object before a jury is a quintessential matter of trial strategy not to be second-guessed.") (citations omitted).

All of the exhibits at issue were admitted during the testimony of Roger Garner. *See* Doc. #21-4 at 96-120. Defense counsel questioned Garner concerning the different dates and inconsistencies in the typewritten reports. *See id*. at 97-100. Defense counsel also Garner about the different dates on the affidavits and arrest warrants, suggesting that law enforcement may not have had an active warrant at the time Kleckner was brought in by law enforcement. *See id*. at 100-02. It is apparent from a review of Garner's testimony that defense counsel could have reasonably questioned Garner to discredit the investigation performed by pointing out inconsistencies in the timeline offered by interviewers, investigators, and law enforcement. Additionally, counsel could have reasonably determined it was in Kleckner's best interests to avoid objecting to the introduction of the collective arrest warrants and/or the warrant and affidavit of Garner, as counsel had already elicited testimony about the documents. However,

even if counsel's actions were deemed deficient, Kleckner cannot demonstrate prejudice as a result of the introduction of these documents, as his confession and the testimony of the victim were in evidence and would have been sufficient to sustain his convictions. Therefore, the decision rejecting this claim fails to warrant relief under the AEDPA.


Ground Two

Kleckner maintains that he was interrogated in violation of his Fifth Amendment rights, and that trial counsel rendered ineffective assistance in addressing the matter during court proceedings. Specifically, Kleckner argues: (1) that his interrogation was too lengthy; (2) that his interrogation was not recorded or transcribed; (3) that his confession was involuntary; and (4) that his continued interrogation after he asked to stop violated his right to silence.

At the outset, the Court notes that Respondents concede that the majority of Kleckner's interrogation claims are exhausted but argue that the Court is prohibited from hearing Kleckner's complaints that concerning the length of the interrogation or law enforcement's failure to record the interrogation, as those issues were not raised on direct appeal or post-conviction review. "Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief." *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). To satisfy this requirement, the applicant must present his claims to the state's highest court in a procedurally proper manner, thereby providing the court with a fair opportunity to consider the claims. *See Carter v. Estelle*, 677 F.2d 427, 442-44 (5th Cir. 1982). In his reply to Respondent's answer, Kleckner makes no argument that these issues are exhausted, and it appears that they are not. The Court need not resolve the issue, however, as it is apparent that neither unexhausted claim warrants relief. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

First, Officer Garner's interrogation lasted approximately one to two hours, and an interrogation of that length is not enough to conclude that his confession was coerced. *See* Doc. #21-4 at 106, 140. *See, e.g., Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010) (noting suspect confined to straight-backed chair during three-hour interrogation could not demonstrate "that an interrogation of this length is inherently coercive"). Second, the Fifth Circuit has declined to consider an argument that a confession must be written or recorded to be valid. *See United States v. Contreras*, 373 F. App'x 484, 2010 WL 1558960, at *2 (5th Cir. 2010). Accordingly, neither of these claims warrant federal habeas relief.

Kleckner next maintains that his confession was not voluntary, as he was forced to sign the confession written by law enforcement, and that his medical condition affected his ability to give a voluntary statement.

As the Court has already noted, there was no pre-trial determination made regarding the voluntariness of Kleckner's confession, though the trial judge did state that he would have denied any suppression motion that had been filed. *See* Doc. #21-5 at 132. The United States Supreme Court has rejected a claim that a defendant has an automatic right to a hearing as to the voluntariness of a confession, even when the defendant does not object to its admission, and it has held that "the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977).

Kleckner testified extensively at trial regarding his diabetes at the time of interrogation, stating that he told officers multiple times that he did not feel well, that he was confused, and that he needed to check his blood sugar. *See* Doc. #21-4 at 137-43; Doc. #21-5 at 3, 23-25, 49, 66. Officer Garner and Officer Aldridge testified that Kleckner never stated that he did not feel well, never complained about physical problems, never stated that he wanted to take a break, never stated he did not understand something, and never made any statements concerning his sugar level or that he suffered with diabetes. *See* Doc. #21-4 at 110, 120-21; Doc. #21-5 at 111-12.

Garner testified that he advised Kleckner of his *Miranda* rights when he picked Kleckner up at his girlfriends' house, and that he advised Kleckner again when they arrived at the Union County Sheriff's Office, which Officer Aldridge confirmed. Doc. #21-4 at 82-83; Doc. #21-5 at 108, 111. Kleckner admitted that Garner read the *Miranda* waiver to him and that he signed the waiver, albeit with a caveat that he did not fully understand it because of his blood sugar. Doc. #21-5 at 21-23.

Kleckner dictated his statement to Garner, and Kleckner initiated at various parts of the statement and signed at the bottom of each page. *See, e.g.*, Doc. #21-4 at 27-31, 62-63. In his statement, Kleckner admitted to touching his victim's breasts and vagina, inserting his finger in her vagina, and the victim touching his penis. *See, e.g.,* Doc. #21-4 at 91-92. Kleckner confirmed that Officers Garner and Aldridge were present at the time of his statements. *Id*. at 141; Doc. #21-5 at 65.

The Court finds that the record supports a determination that Kleckner was informed of his rights on two separate occasions, that he executed a voluntary waiver of those rights before giving a statement that he initialed nine times and signed at the bottom of each page. Other than his self-serving testimony, nothing in the record supports a determination that Kleckner's confession was involuntary or coerced. The decision rejecting this claim fails to warrant relief under the AEDPA.

Finally, the Court considers Kleckner's claim that his interrogation violated his Fifth Amendment right to remain silent because Officer Garner ignored Kleckner's request to stop the interrogation and instead continued to question him.

As previously noted, Kleckner made incriminating statements to Garner after being given his *Miranda* warnings twice. After making incriminating statements, Kleckner refused to answer specific questions and stated he did not want to say anything more. Doc. #21-4 at 108, 146. Garner asked a couple of additional questions about Kleckner's mobile home, and the interrogation stopped. *Id*. at 108.

In *Davis v. United States*, 512 U.S. 452, 462 (1994), the United States Supreme Court held that questioning in a custodial interrogation may continue unless a suspect unequivocally requests an attorney. Here, there is no suggestion that Kleckner requested to speak to counsel. However, assuming, *arguendo*, that Garner violated Kleckner's right to remain silent by asking additional questions of Kleckner, Kleckner gave no additional incriminating statements after stating he did not want to answer any more questions. Therefore, Kleckner's Fifth Amendment rights were not violated, and the decision rejecting this claim fails to warrant relief under the AEDPA.[6]

## IV.
## Certificate of Appealability

A petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Applying this standard, the Court concludes that a COA should be denied in this case.

---

[6] The Court otherwise notes that police officers' testimony at trial regarding a defendant's invocation of his right to remain silent is not improper when the suspect was arrested, received *Miranda* warnings, involved his right to remain silent after making inculpatory statements to police officers, and then made inconsistent statements while testifying. *Lofton v. Wainwright*, 620 F.2d 74 (5th Cir. 1980).

V.
Conclusion

Jeffrey Kleckner has failed to demonstrate that the adjudication of his claims by the State court resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, it is hereby ORDERED that the instant petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED. A separate final judgment will issue today.

SO ORDERED this 18th day of September, 2018.


 /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE